FARHAD NOVIAN (State Bar No. 118129)
farhad@novianlaw.com
SHARON RAMINFARD (State Bar No. 278548)
sharon@novianlaw.com
ALEXANDER KANDEL (State Bar No. 306176)
alexanderk@novianlaw.com
NOVIAN & NOVIAN LLP
1801 Century Park East, Suite 1201
Los Angeles, California 90067
Telephone:   (310) 553-1222
Facsimile (310) 553-0222

Attorney for Plaintiff,
L.A. T-SHIRT & PRINT, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. T-SHIRT & PRINT, INC., a California corporation dba RIOT SOCIETY<br><br>              Plaintiff,<br><br>     v.<br><br>FASHION NOVA, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.:  2:18−cv−9984 DSF (JCx)<br><br>[Assigned to the Honorable Dale S. Fischer]<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FASHION NOVA, INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Hearing Date:    August 26, 2019<br>Time:              1:30 p.m.<br>Courtroom:       7D |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................1

II.     SUMMARY OF DISPUTED MATERIAL FACTS .......................5

     A.     Defendant's Willful Infringement.........................................5

     B.     The Original Design and the Infringing Design....................6

     C.     Defendant's Refusal to Engage in a Good-Faith Meet and Confer Process...............................................................................7

     D.     Defendant's Motion.............................................................10

III.    DEFENDANT VIOLATED THIS COURT'S RULES AND THE FEDERAL RULES OF CIVIL PROCEDURE AND EVIDENCE..............10

     A.     The Court Should Deny Defendant's Motion for Refusing to Meet and Confer in Good Faith...........................................................10

     B.     The Court Should Deny Defendant's Motion for Failing to Provide the Court With a Separate Statement of Uncontroverted Facts and Conclusions of Law.................................................................13

     C.     The Court Should Deny Defendant's Motion for Providing the Court with a Noncompliant Proposed Judgment............................15

     D.     The Court Should Deny Defendant's Motion for Failing to Provide the Court With Admissible Evidence, in Violation of the Federal Rules of Civil Procedure and the Federal Rules of Evidence ...........................15

IV.     A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANT'S INFRINGING GARMENTS INFRINGE RIOT SOCIETY'S ORIGINAL DESIGN...............................................16

     A.     Riot Society Has Standing to Assert its Copyright Infringement Claims.................................................................................17

     B.     Riot Society has Stated a Claim for Copyright Infringement.............19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    C.      Riot Society's Original Design is Copyrightable ................................ 20

    D.      The Original Design and Infringing Design are Substantially Similar ........................................................................................... 21

V.     PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ATTORNEYS' FEES FOR COPYRIGHT INFRINGEMENT ................... 25

VI.    CONCLUSION ............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ass'n of Unit Owners of Nestani v. State Farm Fire and Cas. Co.*, 670 F. Supp. 2d 1156 (D. Or. 2009) ...............................................................................17

*Baker v. Varitalk, Inc.*, Case No. CV 07-6622-VBF (FFMx), 2009 WL 10654600 (C.D. Cal. Mar. 31, 2009)..........................................................................15

*Beets v. Molina Healthcare, Inc.*, CV 16-05642-AB (KSx), 2016 WL 10966562, at *1, fn. 1 (C.D. Cal. Sep. 22, 2016)...................................................11

*Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179 (9th Cir. 1988) .................16

*Burch v. Regents of University of California*, 433 F. Supp. 2d 1110 (E.D. Cal. 2006)...............................................................................................17

*Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Cir. 1987) .......................16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................17

*Cerelux Ltd. V. Yue Shao*, Case No. CV 17-02909-MWF (KSx), 2017 WL 4769459, at *1 (C.D. Cal. Jun. 9, 2017)......................................... 11, 12

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002)........................................11

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010) ..........18

*Cristobal v. Siegel*, 26 F.3d 1488 (9th Cir. 1994)...................................................16

*Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829 (S.D.N.Y. 2016) ...24

*Cucci v. Edwards*, 510 F. Supp. 2d 479 (C.D. Cal. 2007)......................................12

*De Santiago v. Bellflower Unified School District*, Case No. CV 18-3014-GW(SSx), 2018 WL 6061203, at *2 (C.D. Cal. Oct. 1, 2018) ..................... 14, 15

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ....................21

*Foss v. Spencer Brewery*, 365 F. Supp. 3d 168 (D. Mass. 2019) ...........................19

*Fourth Estate Pub. Benefit Corporation v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019).................................................................................................18

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542 (9th Cir. 1989)................................................................................................16

*Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684 (9th Cir. 1976)....................16

*Hayes v. Superior Court of California*, Case No. CV 10-1818-GW(RCx), 2010 WL 11549761, at *2 (C.D. Cal. Nov. 8, 2010) ........................................................14

*James R. Glidwell Dental Ceramics, Inc. v. Philadelphia Indem. Ins. Co.*, No. 8:16-CV-01155-JLS (Ex), 2016 WL 9223782, at *1 (C.D. Cal. Sep. 12, 2016)..11

*McSherry v. City of Long Beach*, 584 F.3d 1129 (9th Cir. 2009)............................17

*Metcalf v. Bocho*, 294 F.3d 1069 (9th Cir. 2002) ...................................................22

*Oliver v. Luner*, Case No. LA 18-cv-02562 VAP (AFMx), 2018 WL 5928170, at *1 (C.D. Cal. May 21, 2018)................................................................................12

*Optional Capital, Inc. v. Kim*, No. CV 04-3866 ABC (PLAx), 2018 WL 2986660, at *6 (C.D. Cal. Aug. 1, 2008) ...........................................................................16

*Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) ..........................16

*Professional Programs Group v. Department of Commerce*, 29 F.3d 1349 (9th Cir. 1994)..................................................................................................................11

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) ......................................24

*Santa Margherita, S.p.A. v. Weine*, Case No. CV 12-03499 DSF (RZ), 2013 WL 12125539, at *8 (C.D. Cal. Aug. 28, 2013) .....................................................16

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003) .....................................................21

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990)..................................................22

*Sid & Marty Krofft Television Products, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) ................................................................................... 22, 24

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) ....................................................24

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000)...........................22

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) ................18

*Young v. Wolfe*, 478 Fed. Appx. 354 (9th Cir. 2012) .............................................14

*Young v. Wolfe*, CV 07-3190-RSWL (RZx), 2009 WL 10677420, at *3 (C.D. Cal. Aug. 6, 2009)...................................................................................................14

**Statutes**

17 U.S.C. § 410(d) ........................................................................................3, 18

17 U.S.C. § 412...............................................................................................4, 25

17 U.S.C. § 504 ................................................................................25

17 U.S.C. § 505 ................................................................................25

**Rules**

Federal Rule of Civil Procedure 12 ...............................................19

Federal Rule of Civil Procedure 56 ...............................................16

Federal Rule of Civil Procedure 7 .................................................19

# I.    **INTRODUCTION**

This Action arises out of the willful acts of copyright infringement perpetrated by Defendant Fashion Nova, Inc. ("Defendant") in connection with the popular Panda Rose design ("Original Design") of the Plaintiff, L.A. T-Shirt & Print, Inc., a California corporation dba Riot Society ("Riot Society"). Capitalizing on the intellectual property and labor of Riot Society, Defendant hijacked Riot Society's merchandise campaign by selling merchandise, including sweatshirts ("Infringing Garment"), bearing a design that is identical, or nearly identical, to the Original Design ("Infringing Design").  Defendant continues to sell the Infringing Garment to this day.

To make matters worse, Defendant's infringement is willful.  In or around June 2018, Defendant contacted Riot Society to ask Riot Society whether it would be interested in forming a partnership that would allow Defendant to sell sweatshirts depicting the Original Design on Defendant's products.  When Riot Society declined the proposed partnership, Defendant proceeded to take matters into its own hands, selling the Infringing Garments without Riot Society's permission.

As reprehensible as Defendant's conduct has been, its legal machinations have not been any better.  Defendant has now filed Fashion Nova, Inc.'s Notice of Motion and Motion for Summary Judgment of Noninfringement; Memorandum of Points and Authorities (Dkt. No. 28) (the "Motion").

First, in violation of this District's Local Rules and this Court's Standing Order for Cases Assigned to Judge Dale S. Fischer (Dkt. No. 8) ("Standing Order"), Defendant did not engage in a meaningful, good-faith meet and confer process.  In fact, during the cursory and vague meet and confer call Defendant conducted, Defendant did not even mention many of the arguments it is now making in the Motion.

Compounding Defendant's failure to meet and confer, Defendant failed to give Riot Society anything more than vague bullet points, offering absolutely no

authority other than a general reference to the "Copyright Act," for the remaining arguments. Additionally, in violation of this District's Local Rules and this Court's Order re Motions for Summary Judgment ("MSJ Order"), Defendant failed to lodge <u>any</u> proposed Statement of Uncontroverted Facts and Conclusions of Law/ Separate Statement of Uncontroverted Facts and Conclusions of Law. This not only deprives the Court and Riot Society of the ability to identify Defendant's purportedly undisputed facts without having to scour the record, but it deprives Riot Society of the ability to respond with a meaningful Statement of Genuine Disputes, as Riot Society has no proposed uncontroverted facts to respond to. Further, in violation of this Court's Standing Order, Defendant filed a proposed order that contains its attorney names and addresses on the caption page and a footer with the document name. For all the foregoing reasons, the Motion is procedurally defective and should be denied.

Defendant's disregard for the rule of law does not end with this District's Local Rules and this Court's standing orders, but extends to the Federal Rules of Civil Procedure and the Federal Rules of Evidence as well. Defendant has failed to present any expert evidence and has failed to present any authenticated exhibits in support of its Motion. Indeed out of the 9 exhibits (A-I) that Defendant purports to submit in support of its Motion, only 2 exhibits (B-C) are even mentioned in a declaration. <u>No</u> exhibit is properly authenticated. As such, the Motion is deficient from an evidentiary standpoint, and should be denied.

Further, Defendant's substantive arguments lack merit. First, Defendant argues, that Riot Society lacks standing to bring this suit because Riot Society submitted its copyright "application, materials, and fee" to the Copyright Office on November 27, 2018 and filed this suit three days later on November 30, 2018. Defendant did not even mention this argument during the meet and confer process. In its Motion, Defendant admits that "[i]n theory, such turnaround time for processing a copyright application may be possible [but] … highly improbable

and near [sic] impossible."   A motion for summary judgment must rely on concrete evidence, and not on hypothetical conjecture of what is and is not "improbable."  More importantly, 17 U.S.C. § 410(d) expressly states that "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee … have all been received in the Copyright Office."  These are the same items that Defendant admitted Riot Society submitted to the Copyright Office on November 27, 2018.   Further, Riot Society's valid Certificate of Registration unequivocally lists the Effective Date of Registration as November 27, 2018.  Thus, Riot Society has standing to bring this lawsuit.  Even if Riot Society lacked standing at the time it filed this lawsuit (which it did not), Defendant would at most be entitled to a dismissal without prejudice until the certificate is issued.  Since Riot Society has a valid copyright certificate today, it would refile this lawsuit on the day of the dismissal.

Second, Defendant argues that Riot Society fails to state a claim for copyright infringement because the elements in the Original Design are unoriginal.  Defendant relies on an unauthenticated screenshot of a Google search to show the Court what a panda looks like.  Defendant did not even mention the argument regarding its Google search of "panda" during the meet and confer. Defendant seems to miss obvious differences between the photographs of pandas it purportedly Googled and the Original Design, which portrays a unique and cartoonish black and white rendition of a panda bear face where the panda is forward looking; the eyes lack pupils; the ears contain a white outline; with a rose placed in the mouth of the panda bear; with the rose bud on the right, stem on the left, and leaves throughout; and four Chinese letters above the panda.  Not one of these unique features is depicted in any of the 15 images depicted in Defendant's screenshot of the Google search for "panda."  Defendant also claims that it located a downloadable phone screen wallpaper from at least as early as 2011 which depicts "the notion of a giant panda with a rose in its mouth in a nearly identical

manner."  This second image is unauthenticated, and Riot Society has no way of verifying whether this image existed as early as 2011.  Defendant has not indicated what website the image was purportedly pulled from, when it was pulled, or even what Google search was performed.  Indeed, the earliest image of this wallpaper that Plaintiff can locate is from 2018.  In any event, there are significant differences between the phone screen wallpaper and the Original Image in the depiction, orientation and placement of the images.

Third, Defendant argues, without any expert evidence, that there are differences between the Original Design and the Infringing Design.  To make this argument, Defendant points to an unauthenticated image of what it purports to be the Infringing Garments, not to actual sample material of the Infringing Design. Defendant argues that the differences "would be apparent to a reasonable juror." Perhaps a reasonable juror would agree, perhaps not.  This is exactly why this issue needs to be resolved at trial.  Defendant seems to miss numerous similarities between the Original Design and the Infringing Design which a reasonable juror would consider, including that both designs prominently display a very specific black and white rendition of a panda bear; the panda bear is forward looking; the eyes, nose, and mouth are in black, the ears are in black, with the rose bud on the right, the stem on the left, and leaves throughout; with Chinese letters, in a curved orientation above the panda bear, that are similar in numbering and spacing.

Further, Defendant misconstrues 17 U.S.C. § 412, and relies on the wrong version of Riot Society's complaint, to argue that Riot Society is not entitled to statutory damages and fees.  Defendant claims that Riot Society failed to file a copyright application within one month after learning of Defendant's copyright infringement in June 2018, as alleged in the Complaint (Dkt. No. 1).  Defendant is attempting to mislead the Court by citing to the wrong version of the Complaint, which contained an inadvertent clerical error.  Riot Society's First Amended Complaint (Dkt. No. 10), which is the operative complaint, clearly alleges that

Riot Society discovered Defendant's copyright infringement in October, not June, 2018. Riot Society indeed discovered Defendant's infringement in October, not June. Riot Society filed this Action in November, 2019, within one month after making this discovery.

## II.     SUMMARY OF DISPUTED MATERIAL FACTS
### A.     Defendant's Willful Infringement

Riot Society was incorporated in January 2012 and is in the business of manufacturing, wholesale, and direct sale to consumers, of high end clothing lines and accessories, many of which display Riot Society's copyrighted designs. Plaintiff's Separate Statement of Genuine Disputes ("Separate Statement") ¶ 1. Riot Society manufactures and distributes the Panda Rose Men's Hoodie, as well as long-sleeve shirts and T-shirts, bearing the Original Design ("Original Garment"). *Id.* ¶ 3. Riot Society sells the Original Garment hoodie on its website, https://riotsociety.com/products/panda-rose-mens-hoodie for $48.00. *Id.* In certain circumstances, such as its Amazon Fashion store, https://www.amazon.com/Riot-Society-Graphic-Hooded-Sweatshirt/dp/B07G9RF1JV, Riot Society sells the Original Garment Hoodie for $55.50. Separate Statement ¶ 4. Riot Society also sells the Original Garment wholesale to other sellers. *Id.* ¶ 5. The Original Garment is one of Riot Society's best-selling products. *Id.* ¶ 6. Riot Society has sold over approximately 50,000 units of the Original Garment, including hoodies, long-sleeve shirts, and T-shirts. *Id.*

Defendant is known for selling "low-price" merchandise. *See* https://www.businessoffashion.com/community/people/richard-saghian. In or around June 2018, Casey Haines, a buyer for the Defendant, contacted Michael Homayounian, an officer, director, and majority shareholder of Riot Society. Separate Statement ¶ 7. Mr. Haines proposed a partnership between the two companies, where Defendant would sell merchandise designed by Riot Society, depicting the Original Design. *Id.* Due to Defendant's very low price points,

lower quality merchandise due to low price points, "private label" business model, and reluctance to include Riot Society's brand name on its merchandise, Riot Society (which is known for quality merchandise and higher prices), decided against the partnership and declined Defendant's offer. *Id.* ¶ 8.

In or around October 2018, Mr. Homayounian learned that Defendant was selling the Infringing Garment on its website for $22.99, substantially less than the $48.00 or $55.50 Riot Society sells the Original Garment hoodie for. *Id.* ¶ 9. Mr. Homayounian then contacted Mr. Haines, in an attempt to clarify what he hoped was a mere misunderstanding. *Id.* Shortly after contacting Mr. Haines, Mr. Homayounian was delighted to learn that Defendant took down the Infringing Garment from its website. *Id.* In light of what Mr. Homayounian believed to be Defendant's good faith attempt to rectify the problem, Mr. Homayounian and Riot Society decided not to take any further action against Defendant. *Id.*

Mr. Homayounian's and Riot Society's delight, however, was short lived. A few hours later, Mr. Homayounian learned that Defendant relisted the Infringing Garment on its website, https://www.fashionnova.com/products/always-love-sweatshirt-black, on sale for $14.98, even less than its original listing price of $22.99. Separate Statement ¶ 10. The Infringing Garment remains on sale for $14.98 to this day. *Id.*

**B.    The Original Design and the Infringing Design**

On or about November 27, 2018, Riot Society submitted its application, deposit material, and fee to the United States Copyright Office in order to register the Original Design. *Id.* ¶ 2. The Copyright Office approved Riot Society's application, and issued a Certificate of Registration, Registration Number VA 2-128-972, with an Effective Date of Registration of November 27, 2018. *Id.* The date of first publication is Mach 1, 2017. *Id.* A few days after the effective date of its copyright registration, Riot Society filed this Action to protect its intellectual property.

The Original Design is substantially different from the panda images

Defendant located by Googling "panda." *Id.* ¶ 24.  The Original Design portrays a unique and cartoonish black and white rendition of a panda bear face where the panda is forward looking; the eyes lack pupils; the ears contain a white outline; with a rose placed in the mouth of the panda bear; with the rose bud on the right, stem on the left, and leaves throughout; and Chinese letters above the panda.  *Id.* Not one of these features is depicted in any of the 15 images depicted in Defendant's Google screenshot of the word "panda." *Id.*

With regards to the downloadable screen wallpaper image Defendant claims existed as early as 2011 ("Wallpaper Design"), the only version of it that Riot Society can locate was published in 2018 (2018-08-12), after the date of first publication of the Original Design in March 2017.  *Id.* ¶ 25.  The Wallpaper Design is different from the Original Design.  *Id.* ¶ 26.  The panda in the Wallpaper Design is facing in various orientations, not only forward; the panda in the Wallpaper Design has a bigger head and appears to be smiling; the panda face in the Wallpaper Design appears to be thicker and 3 dimensional; the eyes in the Wallpaper Design have pupils; the color of the rose and leaves and their orientation is different; and the ears of the panda in the Wallpaper Design do not have a white outline.  *Id.*  In all of these ways, the Wallpaper Design differs from the Original Design.  *Id.*

There are numerous similarities between the Original Design and the Infringing Design, including that both designs prominently display a very specific black and white rendition of a panda bear; the panda bear is two dimensional, forward looking; the eyes, nose, and mouth are in black; the ears are in black, with the rose bud on the right, the stem on the left, and leaves throughout; with Chinese letters, in a curved orientation above the panda bear, that are similar in numbering and spacing.  *Id.* ¶ 27.

**C.    Defendant's Refusal to Engage in a Good-Faith Meet and Confer Process**

On or about July 8, 2013, Defendant first contacted Riot Society to meet

and confer regarding the Motion.  *Id.* ¶ 11.  On July 10, counsel for Riot Society attempted to call counsel for Defendant to meet and confer.  Defendant's counsel claimed it was unavailable.  *Id.*  Riot Society's counsel then emailed Defendant's counsel, asking if it was able to speak later that same day.  *Id.*  Defendant' counsel replied that his assistant will be in touch regarding available dates.  *Id.*  When Riot Society's counsel heard from the assistant, he mistakenly asked to meet and confer on July 23, having made a clerical error in calculating the deadline for this Motion.  *Id.*  ¶ 12.  Defendant's counsel made the same mistake, offering times on July 23.  *Id.*  When Riot Society's counsel realized of the mistake, he offered to meet and confer that very same day, July 17, 5 days prior to the meet and confer cutoff of July 22.  *Id.*  ¶ 13.

On July 17, 2019, Defendant's counsel called Riot Society's counsel to meet and confer.  *Id.* ¶ 14.  The call lasted just a few minutes, and the majority of it was related to settlement and discovery discussions.  *Id.*  Defendant's counsel did not provide a list of arguments, authorities, or evidence it intended to cite before the call.  *Id.*  During the call, Defendant's counsel presented only vague and general topics.  *Id.*  Defendant's counsel informed Riot Society's counsel that Defendant intends to move for summary judgment on 3 issues: (1) lack of substantial similarity; (2) reference to the Wallpaper Design that was allegedly found in 2012 or earlier[1]; and (3) the argument that Riot Society is not entitled to statutory damages.  *Id.* ¶ 15.  Defendant did not at all mention the arguments that: (1) Riot Society lacks standing to assert this copyright claim and; (2) that the Original Design is unoriginal because the Original Design is the famous and commonly depicted panda bear.  *Id.*.  Riot Society first learned of these arguments in the Motion.  *Id.*

With regards to the 3 arguments that Defendant's counsel did mention during the call, he did not point to a single case or other authority, other than a

---

[1] In the Motion, Defendant claims the design was found in 2011 or earlier.

general reference to the "Copyright Act." *Id.* ¶ 16.  He did not answer Riot Society's counsel's questions as to what evidence will be submitted, and whose declarations such evidence will be authenticated by. *Id.*

With regards to Defendant's argument of lack of substantial similarity, during the meet and confer, Defendant's counsel merely said that he is aware of distinction between the Chinese symbol, panda bear, rose and English writing between the Original Image and the Infringing Image. *Id.* ¶ 17.  He provided no details. *Id.*  He also stated that he reserves the right to bring attention to other differences between the two images in the Motion. *Id.*  He also stated that he has not yet decided what, if any evidence or authority, he will cite in support of this argument. *Id.*

With regards to Defendant's argument that the Wallpaper Design was found in 2012 or earlier, during the meet and confer, Defendant's counsel merely said that he is aware of an image from 2012 (or earlier) that is identical to the Original Design. *Id.* ¶ 18.  He did not state where he found the image. *Id.*  He stated that in its Motion, Riot Society will include a screenshot with a time tracker showing when the Wallpaper Design was posted online. *Id.*  It has failed to do so. *Id.*  He was unable to respond as to whether or not Riot Society will rely on any authority in support of this position. *Id.*

With regards to Defendant's argument that Riot Society is not entitled to statutory damages, during the meet and confer, Defendant's counsel merely said that Defendant will argue that statutory damages will not apply. *Id* ¶ 19.  He declined to provide any authority for this position, other than a general reference to the "Copyright Act." *Id.*  He indicated Defendant will introduce Riot Society's copyright application into evidence in the Motion. *Id.*  Defendant has failed to do so. *Id.*  Defendant's counsel stated he has not yet decided what, if any authority, and other evidence, Defendant will cite in support of this argument. *Id.*

Defendant's counsel also stated that the list of issues he raised is not an

exhaustive list, and Defendant reserves the right to raise other issues in the Motion. *Id.* ¶ 20. When Riot Society's counsel asked Defendant's counsel what the other issues may be, what evidence would support them, and what authority would support these positions, Defendant's counsel was unable to answer. *Id*. Defendant did not offer to negotiate the hearing date. *Id.* ¶ 21. Prior to ending the call, Riot Society's counsel informed Defendant's counsel that Defendant failed to satisfy this District's meet and confer requirements. *Id.* ¶ 22.

On or about July 17, 2019, the same day as the call, Riot Society's counsel memorialized the above issues in an email to Defendant's counsel. *Id.* ¶ 23. On or about July 18, 2019, Defendant's counsel responded, stating that Riot Society too did not provide any evidence in support of its position, adding that the burden to meet and confer falls on both parties. *Id*. Riot Society's counsel then replied, stating that the burden to meet and confer is on the moving party and that given that Defendant provided no evidence or authority during the call, Riot Society simply had nothing to respond to. *Id*. Defendant failed to respond to the meet and confer portion of this email[2] or otherwise further meet and confer prior to filing the Motion, despite having 5 more days prior to the meet and confer cutoff. *Id*.

**D.    Defendant's Motion**

Defendant filed the Motion without a proposed Statement of Uncontroverted Facts and Conclusions of Law. Defendant filed a proposed judgment that includes its attorneys' names and addresses on the caption page and a footer with the document name. Of 9 exhibits (A-I) included with Defendant's Motion, only 2 (B-C) are mentioned in a declaration.

**III.    DEFENDANT VIOLATED THIS COURT'S RULES AND THE FEDERAL RULES OF CIVIL PROCEDURE AND EVIDENCE**

**A.    The Court Should Deny Defendant's Motion for Refusing to Meet and Confer in Good Faith**

Pursuant to this District's Local Rules, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss ***thoroughly***, preferably

---

[2] Part of the email addressed settlement and discovery negotiations, which Defendant responded to.

in person, the *substance* of the contemplated motion and any potential resolution." L.R. 7-3 (emphasis added).  Additionally, this Court's Standing Order states:

> Counsel **must** comply with Local Rule 7-3. … Counsel should discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court. … **Failure to comply with this Rule will be grounds for sanctions.  If fault is attributed to the moving party, the Court may decline to hear the motion.**

Standing Order (Dkt. No. 8) at 5:13-21 (emphasis in original).

"The meet-and-confer requirement of Local Rule 7-3 assists in promoting the resolution of disputes without requiring the intervention of the Court.  It also serves the important purpose of providing the opposing party sufficient notice as to the contents of a proposed motion and an opportunity to negotiate on the hearing date."  *Cerelux Ltd. V. Yue Shao*, Case No. CV 17-02909-MWF (KSx), 2017 WL 4769459, at *1 (C.D. Cal. Jun. 9, 2017).  The burden of complying with L.R. 7-3 falls on the moving party.  *See Beets v. Molina Healthcare, Inc.*, CV 16-05642-AB (KSx), 2016 WL 10966562, at *1, fn. 1 (C.D. Cal. Sep. 22, 2016) ("*Movants* must comply with the Local Rules, which require the parties to meet and confer.") (emphasis added).

"Local rules have the 'force of law' and are binding upon the parties and upon the court, and a departure from local rules that affects 'substantial rights' requires reversal."  *Professional Programs Group v. Department of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).  This Court "has considerable latitude in managing the parties' motion practice and enforcing local rules."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002); *see also James R. Glidewell Dental Ceramics, Inc. v. Philadelphia Indem. Ins. Co.*, No. 8:16-CV-01155-JLS (Ex), 2016 WL 9223782, at *1 (C.D. Cal. Sep. 12, 2016) ("Parties must strictly adhere to the Local Rules of this district, and a district court has the discretion to strike any motion that fails to comply with the Local Rules.").  "Due to the importance of Local Rule 7-3 in furthering judicial economy, a failure to comply

with L.R. 7-3 can result in the court striking or denying the motion." *Oliver v. Luner*, Case No. LA 18-cv-02562 VAP (AFMx), 2018 WL 5928170, at *1 (C.D. Cal. May 21, 2018); *see also Cucci v. Edwards*, 510 F. Supp. 2d 479, 486 (C.D. Cal. 2007) ("[T]he Court may deny Plaintiff's motion on [the] basis [of failing to meet and confer] alone."). Courts in this District have denied summary judgment motions because the moving party has failed to comply with L.R. 7-3. *See e.g.*, *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11-0427 DOC (MLGx), 2012 WL 123146 (C.D. Cal. Jan. 13, 2012).

Here, Defendant, who is the moving party, engaged in a cursory meet and confer call to check the box and claim that it satisfied L.R. 7-3. In reality, it did not. Defendant raised numerous arguments in the Motion that it did not even mention during the call. Defendant did not attempt to negotiate the hearing date. Indeed, considering how close to the MSJ cutoff deadline Defendant waited before first contacting Riot Society to conduct the call, it does not appear that there was any opportunity to hold such negotiations. This is evidenced by the fact that Defendant filed the Motion on the last possible day for it to be heard before the MSJ cutoff.[3] Defendant did not cite to a single case or authority, other than a general reference to the "Copyright Act" during the meet and confer call, despite Riot Society's counsel asking Defendant's counsel for such authority. Defendant did not identify any evidence it will include in the Motion or how it will authenticate such evidence, despite Riot Society's counsel asking Defendant's counsel for such evidence.

The incompleteness, brevity and vagueness of Defendant's meet and confer call came nowhere close to "serv[ing] the important purpose of providing the opposing party sufficient notice as to the  contents of [the] proposed motion and an opportunity to negotiate the hearing date." *See Cerelux*, 2017 WL 4769459, at *1.

---

[3] Pursuant to this Court's MSJ Order, "[a]s a courtesy to both the Court and the opposing party, a moving party should not wait until the last possible day to file motions for summary judgment or partial summary judgment." MSJ Order at 1:25-27.

Indeed, by raising entirely new arguments in the Motion that were never even mentioned during the call, offering zero authority or any evidence for any of its positions during the call, and not offering to negotiate the hearing date, the only purpose Defendant even held the brief meet and confer call was to "check the box" and tell the Court that it complied with L.R. 7-3.  While this Court's Standing Order instructs the parties to attempt to narrow the issues before the Court during the meet and confer, this was simply impossible given the incompleteness, brevity and vagueness of Defendant's meet and confer call.  Defendant gave Riot Society nothing of substance to look into and respond to.

Riot Society gave notice to Defendant of its failure to comply with Local Rule 7-3 during the meet and confer call and in a follow up email that same day. Despite having 5 more days to rectify its noncompliance before the meet and confer cutoff to file the Motion on the last possible day before the MSJ cutoff, Defendant chose to do nothing.

Defendant had direct notice of the degree of detail required in a meet and confer call, and of this Court's power to decline to hear the Motion and sanction Defendant for failure to comply with L.R. 7-3 from this Court's Standing Order. Accordingly, Riot Society respectfully requests that the Court deny the Motion for Defendant's refusal to meet and confer.

**B.** **The Court Should Deny Defendant's Motion for Failing to Provide the Court With a Separate Statement of Uncontroverted Facts and Conclusions of Law**

Pursuant to this District's Local Rules, a separate statement of uncontroverted facts is **required** from a party moving for summary judgment:

A party filing a notice of motion for summary judgment or partial summary judgment **shall** lodge a proposed "Statement of Uncontroverted Facts and Conclusions of Law."  Such proposed statement **shall** set forth the material facts as to which the moving party contends there is no genuine dispute.

L.R. 56-1 Documents Required From Moving Party (emphasis added); *see also*

*Hayes v. Superior Court of California*, Case No. CV 10-1818-GW(RCx), 2010 WL 11549761, at *2 (C.D. Cal. Nov. 8, 2010) ("In the Central District of California, a moving party is **required** to serve and lodge with the motion a separate statement setting forth the material facts as to which the moving party contends there is no dispute") (emphasis added). "If a party fails to comply with these Local Rules, the Court is not required to sift through the record." *Young v. Wolfe*, CV 07-3190-RSWL (RZx), 2009 WL 10677420, at *3 (C.D. Cal. Aug. 6, 2009) (overturned on other grounds by *Young v. Wolfe*, 478 Fed. Appx. 354 (9th Cir. 2012)).

Further, this Court's MSJ Order provides the moving party with extensive instructions as to how to prepare the Separate Statement of Uncontroverted Facts and Conclusions of Law. *See* MSJ Order at 2:13-20. "The separate statement **shall** be prepared in a two-column format." MSJ Order at 2:13-14 (emphasis added). Pursuant to this Court's MSJ Order, "[w]hen filing or opposing a motion for summary judgment, a party is to comply **precisely** with Local Rule 56, the Court's general Standing Order, and this order." MSJ Order at 1:21-23 (emphasis added). By failing to include any statement of uncontroverted facts, Defendant has blatantly disregarded this Court's rules and orders. Further, the Court's MSJ Order states, "**The moving, opposing and reply papers should refer to the numbered paragraphs in the separate statement, rather than the underlying evidence.**" MSJ Order at 2:18-20 (emphasis in original). Not only has Defendant failed to comply with this requirement, but by not including a separate statement at all, it has deprived Riot Society of the ability to comply with this requirement as well.

In *De Santiago v. Bellflower Unified School District*, the party moving for summary judgment lumped together a collection of 12 exhibits, without providing the Court with any basis to properly consider the materials and failed to lodge a proposed Statement of Uncontroverted Facts and Conclusions of Law. Case No. CV 18-3014-GW(SSx), 2018 WL 6061203, at *2 (C.D. Cal. Oct. 1, 2018). The Court noted that the movant "has not taken the first necessary steps towards

obtaining summary judgment." *Id.* at *3. The Court denied summary judgment, declining to "do [the movant's] work for her in her attempt to satisfy her burden on this motion." *Id.* In fact, other Courts in this District have denied summary judgment motions that contained a separate statement that was deficient. *See Baker v. Varitalk, Inc.*, Case No. CV 07-6622-VBF (FFMx), 2009 WL 10654600 (C.D. Cal. Mar. 31, 2009).

That is exactly what Defendant is attempting to do here – have the Court do its work for it. Like in *De Santiago*, Defendant has lumped together a collection of numerous exhibits, without properly authenticating them or explaining to the Court any basis on which it should properly consider the exhibits. Further, like in *De Santiago*, Defendant failed to lodge a proposed Statement of Uncontroverted Facts and Conclusions of Law. Unlike in *Baker*, where the movant at least attempted to submit a separate statement, Defendant here submitted nothing at all. The Court should not do Defendant's work for it. Accordingly, the Court should decline to consider the Motion on the merits.

## C.   The Court Should Deny Defendant's Motion for Providing the Court with a Noncompliant Proposed Judgment

Pursuant to this Court's Standing Order (Dkt. No. 8), proposed orders "**should not contain attorney names, addresses, etc. on the caption page, [and] should not contain a footer with the document name or other information.**" Standing Order at 3:15-17 (emphasis in original). "**Failure to comply with this requirement may result in the denial or striking of the request.**" Standing Order at 3:23-24 (emphasis in original).

Here, Defendant filed a proposed judgment that contained attorney names and addresses on the caption page and a footer with the document name. The Court should not reward Defendant's repeated disregard for the Court's rules and orders and should deny the Motion on this ground, as it had warned the parties it may do in its Standing Order.

## D.   The Court Should Deny Defendant's Motion for Failing to Provide the Court With Admissible Evidence, in Violation of the Federal Rules of Civil

**Procedure and the Federal Rules of Evidence**

Pursuant to the Federal Rules of Civil Procedure, a party moving for summary judgment must support its assertions of fact with evidence.  Fed. R. Civ. P. 56(c), (e).  "A trial court can only consider admissible evidence in ruling on a motion for summary judgment.  Authentication is a condition precedent to admissibility."  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (internal quotation marks and citations omitted).  The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."  *Id.*; *see also Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550-51 (9th Cir. 1989); *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987); *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684, 686 (9th Cir. 1976).

Here, Defendant submitted nine exhibits (A-I) in support of its Motion. Only 2 of the exhibits (B-C) are even mentioned in the only declaration submitted with the Motion, Declaration of Omid E. Khalifeh in Support of Fashion Nova, Inc.'s Motion for Summary Judgment ("Khalifeh Decl.").  Defendant does not even purport to lay any foundation or to authenticate Exhibits A and D-I in the Khalifeh Decl., or elsewhere.  As for Exhibits B and C, Defendant merely cites to them in the Khalifeh Decl.  Defendant does not explain how, when, and where they were obtained, and does not authenticate the exhibits as true and correct copies of what they purport to be.  Accordingly, the Court should decline to consider any of Defendant's "evidence," and should deny the Motion.[4]

**IV.   A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER DEFENDANT'S INFRINGING GARMENTS INFRINGE RIOT**

---

[4] To the extent Defendant may attempt to cure any of the Motion's numerous deficiencies on reply, Riot Society respectfully requests that the Court not allow Defendant to do so.  "[C]ourts generally decline to consider arguments made and evidence presented for the first time in a reply brief."  *Optional Capital, Inc. v. Kim*, No. CV 04-3866 ABC (PLAx), 2018 WL 2986660, at *6 (C.D. Cal. Aug. 1, 2008); *see also Santa Margherita, S.p.A. v. Weine*, Case No. CV 12-03499 DSF (RZ), 2013 WL 12125539, at *8 (C.D. Cal. Aug. 28, 2013) (Hon. Dale S. Fischer).

## SOCIETY'S ORIGINAL DESIGN

### A.   Riot Society Has Standing to Assert its Copyright Infringement Claims

Defendant argues, without ever mentioning this issue during the meet and confer call, that Riot Society lacks standing to assert its copyright infringement claims because it submitted its copyright application, materials, and fee three days prior to filing this Action.  Motion at 9:18-22.  Defendant concedes that "such turnaround time for processing a copyright application may be possible; however, in reality, it is improbable."  Motion at 9:24-26.

As the United States Supreme Court has held, a party moving for summary judgment must present the Court with concrete evidence, not hypothetical conjecture of what is and is not probable.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates absence of a genuine issue of material fact.").  "Summary judgment requires facts, not simply unsupported denials or rank speculation."  *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).  "[S]tatements … based on speculation or improper legal conclusions, or argumentative statements, are not *facts*."  *Burch v. Regents of University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal.  2006) (emphasis in original).  Evidence of mere probability is not relevant.  *See Ass'n of Unit Owners of Nestani v. State Farm Fire and Cas. Co.*, 670 F. Supp. 2d 1156, 1161 (D. Or. 2009) ("[T]estimony that portions of structural members 'probably' fell into pieces during the Policy period does not create a genuine issue of fact.").

Here, Defendant offers no evidence that Riot Society did not have a valid copyright at the time it filed this Action.  To the contrary, Defendant admits that that would be "possible."  Defendant speculates, with no basis, that Riot Society's application was "probably" not granted at the time it filed this Action, while

admitting the possibility that it was granted by then.  This is no basis for summary judgment.

Further, 17 U.S.C. § 410(d), expressly states that "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee… have all been received in the Copyright Office."  These are the same items that Defendant admits Riot Society submitted to the Copyright Office on November 27, 2018.  Further, Riot Society's Certificate of Registration unequivocally lists the effective date of registration as November 27, 2018.  "A certificate of registration from the U.S. Copyright Office raises the presumption of copyright validity and ownership."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017).

Even if Defendant had presented concrete evidence that Riot Society did not yet have a valid copyright at the time it filed this Action (which Defendant failed to do), Defendant would not be entitled to summary judgment.  Defendant cites to *Fourth Estate Pub. Benefit Corporation v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019) for the proposition that actual registration, instead of mere submittal of an application, is necessary in order for a plaintiff to file an action for copyright infringement.  Motion at 9:27-10:7.

Defendant's reading of *Fourth Estate*, however, is inapplicable to this Action for three reasons.  First, *Fourth Estate* was decided on March 4, 2019, over three months later than the date Riot Society filed this Action.  At the time Riot Society filed this Action, the Ninth Circuit unambiguously held that the receipt of a complete application by the Copyright Office satisfied the requirement for registration before bringing a copyright infringement action.  *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010).  Second, in *Fourth Estate*, the Register had not yet acted on Fourth Estate's applications at the time the district court dismissed the complaint.  *Fourth Estate*, 139 S. Ct. at 887.  There, the Register ultimately refused registration.  *Id.*  Here, it is undisputed that Riot

Society currently holds a valid copyright certificate.  It is also undisputed that its effective date is November 27, 2018, which is earlier than the date that Riot Society brought this Action.  "Upon registration of the copyright … a copyright owner can recover for infringement that occurred both before and after registration." *Fourth Estate*, 139 S. Ct. at 886-87.  Therefore, under the very case Defendant cites, *Fourth Estate*, Riot Society is entitled to recover damages for both before and after its registration, because it has a valid copyright.  Third, even District Courts that have dismissed cases under *Fourth Estate*, have done so without prejudice, pending outcome of the plaintiff's copyright application.  *See, e.g.*, *Foss v. Spencer Brewery*, 365 F. Supp. 3d 168, 172 (D. Mass. 2019).  Here, it would be a waste of the Court's time and resources to dismiss Riot Society's claim without prejudice.  In such an event, because Riot Society currently has a valid copyright certificate, it would merely refile the same action the very same day.  This would cause unnecessary delay and give Defendant a second chance to refine and refile its Motion.  Therefore, Riot Society has standing to bring this Action.

**B.**     **Riot Society has Stated a Claim for Copyright Infringement**

Defendant argues that Plaintiff has failed to state a claim for copyright infringement for which relief can be granted.  Motion at 10:14-11:3.  "Failure to state a claim upon which relief can be granted … may be raised … in any pleading allowed or ordered under Rule 7(a) … by a motion under Rule 12(c); or … at trial."  Fed. R. Civ. P. 12(b)(h)(2).  Defendant's Rule 56 Motion is neither a pleading under Rule 7(a), a motion under Rule 12(c), nor made during trial.  Accordingly, Defendant cannot raise this argument in its Motion.

Defendant argues that it Googled a picture of a panda and that the Original Design looks similar to the picture it Googled.  Motion at 10:15-17.  Plaintiff did not even mention this argument during the meet and confer call.

The Original Design is indeed original.  When comparing Defendant's Exhibits A and B (disregarding the evidentiary problems with both), it is clear that Defendant missed obvious differences between the photographs of pandas it

OPPOSITION TO FASHION NOVA, INC.'S MOTION FOR SUMMARY JUDGMENT

purportedly Googled.  The Original Design portrays a unique and cartoonish black and white rendition of a panda bear face where the panda is forward looking; the eyes lack pupils; the ears contain a white outline, with a rose placed in the mouth of the panda bear; with the bud on the right, stem on left, and leaves throughout; and four Chinese letters above the panda.  Not one of these unique features is depicted in any of the 15 images depicted in Defendant's Google screenshot of the word "panda."  Defendant further argues that the Wallpaper Design, existed as early as 2011.  Motion at 10:17-27.  Defendant offers no evidence.  Defendant has not indicated what website the Wallpaper Design was purportedly pulled from, when it was pulled, or even what Google search was performed.  Indeed, the only example of the Wallpaper Design that Riot Society was able to locate is from 2018, well after Riot Society first published its Original Design in 2017.  In any event, there are significant differences between the Wallpaper Design and the Original Design in the depiction, orientation, and placement of the images.  In the Wallpaper Design, the panda bear faces various directions, while the Original Design contains a forward facing panda.  The panda in the Wallpaper Design has pupils; the Original Design panda does not.  The Wallpaper Design panda has fluffy fur; the Original Design panda does not.  The Wallpaper Design panda has as big mouth with a smile; the Original Design panda does not.  The Wallpaper Design is 3 dimensional, the Original Design panda is flat.  The Wallpaper Design lacks both the English and Chinese writing found in the Original Design.  Defendant also claims that Riot Society's brand name in Chinese characters on the Original Design did not originate from Riot Society.  Motion at 10:27-11:2.  It is difficult to imagine who Defendant believes came up with Riot Society's brand name, other than Riot Society.  In any event, Defendant has presented no concrete evidence, expert or otherwise, and there are enough disputed facts regarding the various images for this issue to be resolved by a jury.

**C.**   **Riot Society's Original Design is Copyrightable**

Defendant argues that Riot Society cannot copyright a picture of a panda

under *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003).  Motion at 11:4-12:6.

Defendant did not even mention this argument during the meet and confer call.  In

*Satava*, the Court merely denied the copyright owner's request for a preliminary

injunction, a far cry from granting summary judgment in favor of the defendant.

Further, the *Satava* Court found that ideas expressed in nature are the common

heritage of mankind, and held that the realistic depictions of jellyfish in that case

may not be entitled to copyright protection.  *Id.* at 811.  Here, however, the

Original Design is not at all a realistic depiction of a panda bear.  The Original

Design portrays a unique and cartoonish black and white rendition of a panda bear

face where the panda is forward looking; the eyes lack pupils; the ears contain a

white outline; with a rose placed in the mouth of the panda bear; with the rose bud

on the right, stem on the left, and leaves throughout; and four Chinese letters above

the panda.  This is by no means a depiction of an actual panda.  And actual pandas

are known to hold bamboo shoots, not roses, in their mouth.  But even if the

Original Design contained some unprotectable elements, their unique combination

in the Original Design would be copyrightable.  *See id.* ("It is true, of course, that a

*combination* of unprotectable elements may qualify for copyright protection.")

(emphasis in original).  Therefore, Riot Society's Original Design is copyrightable.

**D.**  **The Original Design and Infringing Design are Substantially Similar**

Defendant argues that the Original Design and the Infringing Design are not

substantially similar.  Motion at 12:7-16-27.  Although Defendant's counsel briefly

mentioned a lack of similarity during the meet and confer call, he went into zero

details.  Now, Defendant spent five pages in the Motion describing purported

differences between the two images.

As Defendant states in its Motion, to prevail on a copyright infringement

claim, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of

its work.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991).

Typically, a plaintiff may establish the second element by showing that the

infringer had access to the work and that the two works are substantially similar.

OPPOSITION TO FASHION NOVA, INC.'S MOTION FOR SUMMARY JUDGMENT

*Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990).  Typically, a plaintiff proves access through circumstantial evidence that its work has been widely disseminated. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).  In rarer cases, the plaintiff may present circumstantial evidence of access through "a particular chain of events … between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company)." *Id.*

Here, Riot Society has <u>direct</u> evidence of Defendant's access to the Original Design.  In or around June 2018, Casey Haines, a buyer for the Defendant, contacted Michael Homayounian, an officer, director, and majority shareholder of Riot Society.  Mr. Haines proposed a partnership between the two companies, where Defendant would sell products portraying the Original Design.  Logic dictates that if Defendant's representative proposed a partnership to Mr. Homayounian involving the Original Design, he necessarily knew of its existence.  Therefore, Riot Society has direct evidence of Defendant's access to the Original Design.

According to the Ninth Circuit, "[i]n what is known as the 'inverse ratio rule,' we require a lower standard of proof of substantial similarity when a high degree of access is shown."  *Three Boys*, 919 F.2d at 485; *Sid & Marty Krofft Television Products, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977) ("[W]here proof of access is offered, the required degree of similarity may be somewhat less than would be necessary in the absence of such proof."); *Metcalf v. Bocho*, 294 F.3d 1069, 1075 (9th Cir. 2002) ("If the trier of fact were to believe that [Defendants] actually read the scripts … it could easily infer that the many similarities between plaintiffs' scripts and defendants' work were the result of copying, not mere coincidence.").

Here, there are substantial similarities between the Original Design and the Infringing Design.  These similarities include:

- Both designs prominently display a very specific, cartoonish black and white rendition of a panda bear;

- The eyes, nose, and mouth are in black;

- The ears are in black, with white outline;

- A rose is placed in the mouth of the panda bear, with the rose bud on the right, the stem on the left, and leaves throughout;

- Both designs include Chinese letters that are similar in number and spacing, and look nearly identical, at least to someone who does not read Chinese;

- Both designs display two English words directly under the panda bear with one word containing four letters and one word containing 6-7 letters; and

- The Chinese and English writing in both designs are in white and the entire background of both designs is in black.

In light of the long list of similarities between the two designs, and only a few minimal changes Defendant made to the Original Design to produce the Infringing Design, there can be no doubt that the two designs are substantially similar.  Here, like in *Metcalf*, "[i]f the trier of fact were to believe that [Defendant] actually [saw Riot Society's Original Design] … it could easily infer that the many similarities between plaintiffs' [work] and defendants' work were the result of copying, not mere coincidence."  *See Metcalf*, 294 F.3d at 1075.  It is very likely, perhaps certain, that the trier of fact will believe that Defendant actually saw Riot Society's Original Design, in light of the evidence that Defendant contacted Riot Society to propose a partnership based on the Original Design.  Thus, under the "inverse ratio rule," because of the strong evidence of access, Riot Society need not come forward with as much evidence of similarity.  Nevertheless, the two images are so similar that they are substantially similar, even if the "inverse ratio rule" did not apply.

Defendant correctly tells the Court that the "extrinsic test" is the only test relevant to a motion for summary judgment when assessing substantial similarity.

Motion at 7:20-21.  What Defendant fails to tell the Court is that "[t]he extrinsic test *requires* analytical dissection of a work *and* expert testimony."  *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (emphasis added); *see also Krofft*, 562 F.2d at 1164 ("Since it is an extrinsic test, analytic dissection and expert testimony are appropriate.").  Defendant fails to provide any expert evidence with the Motion whatsoever.  To make matters worse, Defendant only points to an unauthenticated image of what it purports to be the Infringing Garment, not to Defendant's actual sample of the Infringing Design.

Defendant's citation to *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) is misplaced.  Motion at 14:4-15:19.  The two images in *Rentmeester* were both photographs taken from different angles, at different times of day, with different backgrounds.  Here, the Original Design is not a photograph of an actual panda, but is an entirely creative, unrealistic, drawing of a panda with unnatural features.  Further, here, unlike in *Rentmesster*, the Original Design and the Infringing Design are on an identical background, using substantially similar, or even identical, colors.

Similarly, defendant's citation to *Croak v. Saatchi & Saatchi N. Am., Inc.*, 174 F. Supp. 3d 829 (S.D.N.Y. 2016) is also misplaced.  Motion at 15:20-16:23. In this SDNY opinion, unlike here, the plaintiff did not have direct evidence of access.  Further, the two images were not similar.  For example, the plaintiff's Pegasus was realistic and life-like, but the defendant's work contained a pink, smiling, oversized stuffed animal.  The two cars in the two images were different. There were numerous other differences, including in the background.

Here, however, the Original Design and the Infringing Design have the same background, and the same nonrealistic, cartoonish depiction of a panda bear. Neither image could be mistaken for a photograph or drawing of an actual living panda bear.  Accordingly, the issue of substantial similarity should be decided by the jury.

OPPOSITION TO FASHION NOVA, INC.'S MOTION FOR SUMMARY JUDGMENT

## V.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ATTORNEYS' FEES FOR COPYRIGHT INFRINGEMENT

Defendant misconstrues 17 U.S.C. § 412 and relies on the wrong version of Riot Society's complaint, to argue that Riot Society is not entitled to statutory damages and fees.  Motion at 17:1-10.  Defendant claims that Riot Society failed to file a copyright application within one month after learning of Defendant's copyright infringement in June 2018, as alleged in the Complaint (Dkt. No. 1).  Defendant is attempting to mislead the Court by citing to the wrong version of the Complaint, which contained an inadvertent clerical error.  Riot Society's First Amended Complaint (Dkt. No. 10) clearly alleges that Riot Society discovered Defendant's copyright infringement in October 2018, not June 2018.  Dkt. No. 10, ¶ 12.  Riot Society learned of Defendant's infringement in October 2018, not in June 2018.  Riot Society filed this action in November 2018, within one month of learning of Defendant's infringement.  Therefore, Riot Society is entitled to its demand for statutory damages and attorneys' fees under 17 U.S.C. §§ 504 and 505.

## VI.   CONCLUSION

For the foregoing reasons, Riot Society respectfully requests that the Court deny Defendant's motion for summary judgment of noninfringement and hold that Riot Society is entitled to statutory damages and attorneys' fees.


Dated: August 5, 2019                    **NOVIAN & NOVIAN, LLP**


                                         By:   __/s/ Farhad Novian_____
                                              FARHAD NOVIAN
                                              Farhad@novianlaw.com
                                              SHARON RAMINFARD
                                              Sharon@novianlaw.com
                                              ALEXANDER KANDEL
                                              AlexanderK@novianlaw.com

                                              Attorneys for Plaintiff